UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JEREMY WARTA, | CIV. NO. 21-00100 LEK-WRP |
| Plaintiff, | |
| vs. | |
| PORTER, MCGUIRE, & KIAKONA, LLP, | |
| Defendant. | |

**ORDER: GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT; AND RESERVING RULING ON THE PORTIONS OF THE MOTIONS ADDRESSING PLAINTIFF'S INVASION OF PRIVACY CLAIM**

Before the Court are the following motions, all filed on March 7, 2022: Plaintiff Jeremy Warta's ("Warta") Motion for Partial Summary Judgment ("Warta's Motion"); Defendant Porter, McGuire, & Kiakona, LLP's ("PMK") Motion for Partial Summary Judgment on Count I, Fair Debt Collections Practices Act ("FDCPA Motion"); and PMK's Motion for Partial Summary Judgment on Counts II, III, and IV ("State Law Motion" and all collectively "Motions"). [Dkt. nos. 53, 54, 55.] The following memoranda in opposition were filed on May 9, 2022: Warta's memorandum in opposition to PMK's FDCPA Motion ("Warta's FDCPA Opposition"); PMK's opposition to Warta's Motion ("PMK's Opposition"); and Warta's memorandum in opposition to PMK's Motion ("Warta's State Law Opposition"). [Dkt. nos. 84, 85, 86.] The Motions came on for hearing on June 9, 2022. For the reasons set forth below,

PMK's FDCPA Motion is denied, PMK's State Law Motion is granted in part, and Warta's Motion is granted in part and denied in part.  Further, the Court reserves ruling on the portion of Warta's Motion and PMK's State Law Motion addressing Warta's invasion of privacy claim, pending the Court's consideration of the addition filings to be submitted.

<u>**BACKGROUND**</u>

Warta filed his original Complaint on February 17, 2021.  [Dkt. no. 1.]  The operative pleading is the Amended Complaint for Damages Declaratory and Injunctive Relief, filed on January 24, 2022 ("Amended Complaint").  [Dkt. no. 44.]  The Amended Complaint alleges the following claims: violations of the Fair Debt Collection Practices Act ("FDCPA" and "Count I"); unfair or deceptive acts or practices ("UDAP"), in violation of Haw. Rev. Stat. § 480-2 ("Count II"); invasion of privacy ("Count III"); and intentional and/or negligent misrepresentation ("Count IV").

**I.   <u>Factual Background</u>**

The evidence in this case shows that Warta has been an active-duty medic with the United States military since 2009. He owns a unit at the Plumeria Hale condominium ("the Unit"). From November 2014 to March 2017, Warta resided in the Unit with

his assistance dog, Oliver.[1]  [Motion, Decl. of Jeremy Warta ("Warta Decl.") at ¶¶ 5-7.]  As the owner of the Unit, Warta is subject to the terms of the Plumeria Hale governing documents, such as the bylaws and house rules (collectively "Governing Documents").  [PMK's Concise Statement of Facts in Supp. of Its Motions for Partial Summary Judgment, filed 3/7/22 (dkt. no. 56) ("PMK's CSOF"), Decl. of Kapono Kiakona ("Kiakona Decl.")at ¶¶ 8-9.[2]]

        Hawaiian Properties, Ltd. ("Hawaiian Properties"), the managing agent for the Association of Apartment Owners of Plumeria Hale ("the AOAO" or "the Association"), sent Warta a letter dated May 18, 2016 in which it assessed him with a $150.00 fine for violating House Rules ("5/18/16 Notice"). [Mem. in Supp. of Warta's Motion, Exh. 1 (5/18/16 Notice).[3]]  The notice alleged Warta, or other persons associated with the Unit, were allowing Oliver to run loose in the Plumeria Hale and were not cleaning up after him.  [Id.]

---

[1] Warta is often deployed, and he is currently stationed in Rota, Spain.  [Motion, Decl. of Jeremy Warta at ¶¶ 16-17.]

[2] Kapono Kiakona, Esq. ("Kiakona") is a partner in PMK. [Kiakona Decl. at ¶¶ 2-3.]

[3] Warta did not file a declaration authenticating his exhibits.

On September 20, 2016, the AOAO filed a complaint in state court against Warta.  See Mem. in Supp. of Warta's Motion, Exh. 5 (docket sheet, generated 1/26/22, for AOAO Plumeria Hale v. Jeremy L. Warta, Case No. 16-001777, in the First Circuit Court ("State Court Case")) at PageID #: 640.[4]  Christian Porter, Esq., and Kapono Kiakona, Esq., were among the counsel for the AOAO.  See id. at PageID #: 638.  PMK has represented the AOAO at all times relevant to the instant case, through the present.[5] [Kiakona Decl. at ¶ 7.]  According to the docket sheet for the State Court Case, Warta initially proceeded pro se, but special counsel was appointed on October 24, 2017, and Bruce Sherman, Esq. ("Sherman") substituted as counsel on November 7, 2017. [Id. at ¶¶ 14-15.]

PMK, through Christian Porter and H. Maxwell Kopper, sent a letter, dated October 27, 2016, that Warta apparently signed on November 20, 2016 ("Letter Agreement").  [Mem. in Supp. of Motion, Exh. 7 (Letter Agreement).]  The heading of the

---

[4] The AOAO's Complaint for Declaratory and Injunctive Relief in the State Court Case ("State Court Complaint") is Exhibit A to Warta's Amended Complaint in this case.  [Dkt. no. 44-1.]

[5] Some of the communications at issue in this case were sent by Porter McGuire Kiakona Chow, LLP ("PMKC"), as counsel for the AOAO.  See, e.g., Mem. in Supp. of Warta's Motion, Exh. 3 (letter dated 10/28/16 to Warta from PMKC).  Based on Kiakona's statement that PMK has represented the AOAO at times relevant to this case, this Court will refer to all communications sent by PMKC as being sent by PMK.

letter referred to the State Court Action, and PMK noted that "a lawsuit has been filed for the removal of the Assistance Animal."  [Id. at PageID #: 685-86.]  The letter stated that, if Warta agreed to the terms set forth in the letter, the AOAO would: "for the last time, permit the Assistance Animal to remain at [Plumeria Hale] on an indefinite probationary basis"; and "grant a sixth [sic] month extension to file an Answer to the Complaint in" the State Court Case.  [Id. at PageID #: 686.] It also stated that, if there were no violations of the terms during that six-month period, the complaint in the State Court Case would be withdrawn.  However, if any violations occurred, the six-month extension would be withdrawn, Warta would be required to immediately answer the complaint in the State Court Case, and the AOAO would proceed with the action.  [Id. at PageID #: 686-87.]

PMK sent a letter, dated October 28, 2016, to Warta at the Unit and at a Missouri address, stating that PMK represented the AOAO in the collection of the debt Warta owed to the AOAO, and that, as of the date of the letter, the total that Warta owed to the AOAO was $5,610.22.  [Mem. in Supp. of Warta's Motion, Exh. 3.]  PMK also the Letter Agreement, which was dated October 27, 2016, to Warta, by email, care of Kristi Bao with the Navy's Region Legal Service Office in Hawai`i.  [Id., Exh. 7.]  Kristie Bao was Warta's "superior [Judge Advocate

General ('JAG')] Officer."  [Warta's FDCPA Opp., Decl. of Jeremy

Warta ("Warta Opp. Decl.") at ¶ 19.]  Laree McGuire testified

that contacting a servicemember through his commanding officer

was not PMK's "typical protocol" and PMK does not "contact

commanding officer as a practice."  [Mem. in Supp. of Warta's

Motion, Exh. 6 (trans. excerpts of 1/26/22 Zoom depo. of Laree

McGuire ("McGuire Depo.")) at 77.]  Ms. McGuire did not know why

the letter was sent to Warta's commanding officer, but

Ms. McGuire testified:

> Well, if you look at it, I mean, they have the
> number, they have her email address.  I mean, my
> assumption about this is that she contacted us
> and asked us to communicate through her.
>
> I mean, we would have no way of knowing who
> his commanding officer was in order to notify her
> of anything if she hadn't contacted us first, or
> if he hadn't given us that information and asked
> us to advise her. . . .

[PMK CSOF, Decl. of Counsel ("Kawana Opp. Decl."),[6] Exh. 13

(McGuire Depo.) at 76-77.]  At his deposition, Warta testified

that he consulted with "base legal," but the office said they

could not represent him in civilian matters.  [Id., Exh. 12

(excerpts of 3/29/22 Videoconference Depo. of Jeremy Warta

("Warta Depo.")) at 24.]

---

[6] The Declaration of Counsel is signed by Sabrina M. Kawana,
Esq., an associate with Gordon Rees Scully Mansukhani, LLP, who
is licensed to practice in the State of Hawai`i.  [Kawana Opp.
Decl. at PageID #: 906.]

In November 2016, Warta paid $6,176.85 to resolve the
fine assessed in the 5/18/16 Notice, as well as other fees
related to the fine, and it was his understanding that his
account with the AOAO was current after that payment.  [Warta
Decl. at ¶¶ 18-19.]  According to Warta, PMK's "application of
[his] AOAO payments to its attorney fees put [him] artificially
behind in [his] assessments and cost [him] late fees and other
costs."  [Id. at ¶ 20.]  PMK argues Warta's belief that the
November 2016 payment was a settlement of the dispute is
inaccurate and based entirely on his own assumptions.  [PMK Opp.
at 5.]  PMK emphasizes that Warta has admitted he did not
discuss the lump sum payment with the AOAO, the property
manager, or PMK.  [Kawana Opp. Decl., Exh. 12 (Warta Depo.) at
34-36.]  PMK also points out that Warta did not remove Oliver at
the time of the payment, and PMK asserts the payment was
insufficient to satisfy all of the amounts he owed to the AOAO
at that time.  [PMK Opp. at 5-6.]

On March 22, 2017, the AOAO notified Warta that he had
to remove his dog from the premises.[7]  On March 30, 2017, Warta
verbally informed the site manager, Mason Hirakawa ("Hirakawa")
that Oliver would be leaving the next day.  On March 31, 2017,

---

[7] See also Mem. in Supp. of Motion, Exh. 4 (letter dated
3/22/17 to Warta from PMK ("3/22/17 Notice")).

Warta complied with the AOAO's notice and removed Oliver from
Plumeria Hale.  [Warta Decl. at ¶¶ 5-10.]   Oliver has not been
at Plumeria Hale since that date.  [Id. at ¶ 14.]   PMK points
out that Warta did not inform PMK of Oliver's removal until
months after the removal.  [PMK Opp. at 5-6.]

Warta argues the 3/22/17 Notice stated the AOAO agreed
to stop the State Court Case if Warta removed his dog from the
property within ten days from letter.  [Mem. in Supp. of Warta's
Motion at 8.[8]]   Although Warta complied, the AOAO obtained an
entry of default against him on April 21, 2017.  [Id. at 8 & n.6
(citing Mem. in Supp. of Warta's Motion, Exh. 5 (State Court
Case docket) at PageID #: 640).]   Although PMK was aware that he
was in the military, it filed two motions for default judgment.
[Id. at 8 & nn.7-10 (some citations omitted) (citing Mem. in
Supp. of Warta's Motion, Exh. 5 (State Court Case docket),
7/7/17, 10/24/17, 8/2/17 entries).]

PMK sent Warta additional correspondence demanding
increasing amounts of attorney's fees and other charges: an
October 3, 2017 demand for $5,631.68; a May 3, 2018 demand for a
total of $25,368.35; a January 24, 2019 demand for a total of
$28,300.35; and a January 25, 2019 demand for $19,630.81 in

---

[8] The 3/22/17 Notice states: "Unless Oliver is removed
within [ten days of the date of the letter], the Association
will proceed with the lawsuit to remove Oliver from the Unit."
[Mem. in Supp. of Motion, Exh. 4 at PageID #: 636-37.]

attorney's fees and $28,300.35 total.  See Mem. in Supp. of Motion, Exhs. 9-12.

On May 30, 2019, PMK recorded a Notice of Lien against the Unit in the amount of $29,017.04 "for unpaid amounts assessed by the [AOAO] as of April 16, 2019, and for all subsequent assessments, including all costs, expenses, and attorneys' fees, incurred by or on behalf of the [AOAO] for collecting any delinquent assessments against the Property" ("Lien").  [Id., Exh. 13 at PageID #: 698-99.]

PMK sent additional correspondence demanding attorney's fees and other charges: an August 15, 2019 demand for $28,300.25; a February 7, 2020 demand for $25,457.90 in attorney's fees; and a February 20, 2020 demand for a $32,263.28 in attorney's fees and costs and a total of $41,515.37.  [Mem. in Supp. of Warta's Motion at 9-10 & nn.18-20.]  Warta points out there was an increase of more than $6,800 in the attorney's fees charged between February 7 and February 20, even though there were no actions taken during that time.  [Id. at 10.]

Warta states the Lien caused him to feel "very worried, concerned, and upset," and he "was afraid, concerned, and upset about Porter, McGuire & Kiakona's collection demands and representations to [his] employer, the U.S. military." [Warta Decl. at ¶¶ 21-22.]

Kiakona and others from PMK engaged in good faith settlement negotiation with Sherman.  Justin Brackett, Esq. ("Bracket") appeared as co-counsel for Warta on January 10, 2020.  [Kiakona Decl. at ¶¶ 20-21.]  PMK continued to engage in settlement negotiations with Sherman and Brackett.  [Id. at ¶¶ 23-24, Exh. 5 (email string from 12/17/19 to 4/29/20 between PMK and Warta's counsel).]  Kiakona states he sent the February 20, 2020 letter to Sherman and Brackett as part of the ongoing settlement negotiations, and he states that Sherman and Brackett requested "an updated breakdown of maintenance fees, electricity charges, late fees, and attorneys' fees and costs." [Id. at ¶ 22, Exh. 4 (2/20/20 letter); see also id. at ¶ 25 (stating Sherman's request for the information was in the 2/5/20 email within Exhibit 5).]  Kiakona states the ledgers, invoices, and explanations about the amounts Warta owed to the AOAO were provided as part of the settlement negotiations.  Ultimately, the parties could not reach a settlement.  [Kiakona Decl. at ¶¶ 26-27.]

According to Warta, PMK charged $54,605.24 in attorney's fees to collect the $150.00 assessment.  [Mem. in Supp. of Motion at 10 & n.25 (citing Mem. in Supp. of Motion, Exh. 18 (Expert Witness Report of Bernard Jay Patterson, CFE)).] PMK refunded $26,056.56 to Hawaiian Properties in January 2022.

[Id. at 10 & n.26 (citing Mem. in Supp. of Motion, Exh. 19 (Hawaiian Properties ledger)).]

### A.   Rulings in the State Court Case

PMK filed a motion for attorney's fees in the State Court Case on September 22, 2020.  [Id. at 11 & n.27 (citing Mem. in Supp. of Motion, Exh. 5 (9/22/20 entry)).]  In October 2020, Warta filed a motion to set aside the entry of default, which the AOAO opposed.  [Kiakona Decl. at ¶¶ 30-31, Exh. 8 (mem. in opp. to motion to set aside default).]  The state court held a hearing on both motions on October 29, 2020, and, on November 6, 2020, the state court granted the AOAO's motion for attorneys' fees and denied the motion to set default.  [Id. at ¶¶ 32-34, Exh. 9 (minute order granting award of $14,678.91 in attorneys' fees),[9] Exh. 10 (minute order denying motion to set aside default).]  The minute order denying the motion to set aside noted the request for declaratory relief was moot, but that the issue of attorneys' fees under Haw. Rev. Stat. § 514B-157 remained.  [Id. at ¶ 34.]

On January 24, 2022, a Final Judgment was filed in the State Court Case ("State Court Judgment").  See Mem. in Supp. of

---

[9] The formal order granting the motion for attorneys' fees was entered on March 5, 2021.  See Kiakona Decl. at ¶ 35; see also Mem. in Supp. of Warta Motion, Exh. 20 (Order Granting Plaintiff's Motion for an Award of Attorneys' Fees and Costs Filed September 22, 2020).

Warta's Motion, Exh. 8 (State Court Judgment).  It stated, in relevant part:

> IT IS HEREBY ORDERED ADJUDGED AND DECREED
> that the case is moot as the dog was removed from
> the property and there are no other issues
> remaining in this case.  No judgment is entered
> as to the Complaint for Declaratory and
> Injunctive Relief, filed herein on September 20,
> 2016 in favor of Plaintiff ASSOCIATION OF
> APARTMENT OWNERS OF PLUMIER [sic] HALE
> ("Plaintiff") and against Defendant JEREMY L.
> WARTA ("Defendant")as the lawsuit is moot and
> declaratory and injunctive relief can not [sic]
> be granted.  See November 6, 2020 Minute Order
> wherein the Court agreed with Movant's position
> that the case is moot and directed Plaintiff's
> counsel to prepare the Order accordingly.
>
> IT IS FURTHER ORDERED, ADJUGED AND DECREED
> that judgment is entered in favor of Plaintiff
> for its attorneys' fees and cost and against
> Defendant in the amount of $14,678.91.  All other
> claims, counterclaims and cross-claims are
> dismissed.

[Id. at PageID #: 689 (emphases in original).]  PMK points out that Warta did not pursue an appeal in the State Court Case. [PMK CSOF at ¶ 23 (citing Kawana Opp. Decl., Exh. 2 (State Court Case docket sheet, as of March 7, 2022)).]

**B.  Public Filing of Warta's Medical Records**

Warta states PMK has admitted to publicly filing his medical records regarding his disability multiple times in the State Court Case on many occasions.  [Mem. in Supp. of Warta's Motion at 11 & nn.29-31 (citing Mem. in Supp. of Warta's Motion, Exh. 21 (PMK's response to request for admissions) at Nos. 7-

12).]  Warta asserts these violated the Hawai`i Court Records Rules and his right to privacy under the state constitution. [Id. at 11.]

On January 17, 2018, less than three months after counsel was appointed to represent Warta, the AOAO filed an ex parte motion to seal portions of the record, pursuant to Rule 9 of the Hawai`i Court Records Rules.  In support of the ex parte motion, a PMK associate (Marcus Busekrus, Esq.) signed a declaration identifying filings that Warta's counsel requested be sealed and stating the public filing of the medical records was merely an oversight, without bad faith.  [Kiakona Decl. at ¶¶ 16-17 (citing Kiakona Decl., Exh. 3 (ex parte motion)).] Kiakona states the state court declined to impose sanctions available under Rule 9.5 of the Hawai`i Court Records Rules. [Id. at ¶ 18.]

## II.  **The Instant Motions**

Warta's Motion seeks summary judgment in his favor as to liability and damages for Counts I and II, as well as liability for Count III.  He does not seek summary judgment as to Count IV.  In the FDCPA Motion, PMK seeks summary judgment in its favor as to Count I, and it seeks summary judgment in its favor as to Counts III, III, and IV in the State Law Motion.

13

**DISCUSSION**

## I.   Judicial Notice

PMK asks this Court to take judicial notice of the filings in the State Court Case because they are public records and are directly related to the issues in the instant case. [Kiakona Decl. at ¶ 13 (citations omitted).]  "The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  A court may take judicial notice of facts "not subject to reasonable dispute because" either: the facts are "generally known within the trial court's territorial jurisdiction;" or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of "matters of public record" pursuant to Rule 201, but it cannot take judicial notice of disputed facts within those public records.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (discussing judicial notice in the context of a motion to dismiss).  The Court will therefore take judicial notice of the filings and rulings in the State Court Case, whether the documents were submitted as exhibits here by PMK or Warta, because the documents are public records and the authenticity of the exhibits has not been disputed.  However,

14

the Court does not take judicial notice of the disputed facts within those filings.

## II.  **Count I - FDCPA**

Count I pleads violations of: 15 U.S.C. § 1692e, based on the allegedly "improper, confusing, and conflicting amounts" that PMK informed Warta he owed; [Amended Complaint at ¶ 65;] violations of § 1692e(2), based on "the use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt"; [id. at ¶ 79;] violations of 15 U.S.C. § 1692f(1), based on attempts to collect debts not authorized by the agreement or the applicable law; [id. at ¶ 101;] and violations of 15 U.S.C. § 1692d, based on harassing, oppressive, or abusive debt collection practices, [id. at ¶ 108].  Warta's Motion does not refer to the portions of Count I based on § 1692d or § 1692f(1).  See Mem. in Supp. of Warta's Motion at 15 ("PMK violated 15 U.S.C. §§ 1692e and 1692e(2) when they made unreasonable demands of Mr. Warta, charging $54,605.24 in attorney fees to collect assessments of $150.00.").  This Court therefore construes Warta's Motion as only seeking summary judgment as to the portions of Count I based on §§ 1692e and 1692e(2).  However, Warta argues PMK is not entitled to summary judgment as to the portions of Count I based on §§ 1692d and 1692f.  See Warta's FDCPA Opp. at 17-19 (addressing violations of §§ 1692d, 1692e, 1692f).

**A.**   <u>**Statute of Limitations**</u>

PMK first argues it is entitled to summary judgment as to Count I because all of the violations that Warta alleges are beyond the statute of limitations period.  15 U.S.C. § 1692k(d) states: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."  "[A]bsent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered."  <u>Rotkiske v. Klemm</u>, 140 S. Ct. 355, 358 (2019).

Warta argues some of PMK's actions and omissions occurred within one year before this action was filed.  As to PMK's actions and omissions prior to that point, Warta argues the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901, *et seq.*, tolled the statute of limitations.  The SCRA provides that:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the

> servicemember's heirs, executors, administrators, or assigns.

50 U.S.C. § 3936.  For purposes of the SCRA, "[t]he term 'servicemember' means a member of the uniformed services, as that term is defined in section 101(a)(5) of Title 10."  50 U.S.C. § 3911(1).  "[T]he armed forces" are among the "uniformed services[.]"  10 U.S.C. § 101(a)(5)(A).  A member of the Army, Navy, Air Force, Marine Corps, or Coast Guard who is on active duty, as defined in 10 U.S.C. § 101(d)(1), is engaged in "military service" for purposes of the SCRA.  50 U.S.C. § 3911(2)(A)(i).  Section 101(d)(1) states:

> The term "active duty" means full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. Such term does not include full-time National Guard duty.

Nothing in either the SCRA or the incorporated portions of 10 U.S.C. § 101 suggests that a servicemember must be deployed or stationed abroad for the SCRA to apply.

Warta states that, at all times relevant to the instant case, he was "an active duty medic in the United States military."  [Warta Decl. at ¶ 5.]  PMK has not identified any evidence contradicting Warta's statement.  Even viewing the

record in the light most favorable to PMK,[10] there is no genuine issue of material fact, and this Court concludes that, as a matter of law, Warta was a servicemember in military service for purposes of the SCRA during all times relevant to the instant case.  See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

> This district court has noted:
>
>> The language of the statute is "unambiguous and unequivocal."  Lowe v. United States, 79 Fed. Cl. 218, 224-25 (2007).  The "express terms of the [SCRA] make certain that the tolling of the statute of limitations is unconditional." Bickford v. United States, 656 F.2d 636, 639 (Ct. Cl. 1981); see also Romualdo P. Eclavea, Tolling Provision of Soldiers' and Sailors' Civil Relief Act (50 App. U.S.C.A. § 525), 36 A.L.R. Fed. 420 (1978) (collecting case law from various jurisdictions recognizing the mandatory nature of the Act's tolling provision and construing this provision liberally in accordance with the Act's remedial nature).

Chung v. U.S. Bank, N.A., 250 F. Supp. 3d 658, 674 (D. Hawai`i 2017) (alteration in Chung).  Because tolling under the SCRA is unconditional and mandatory, the statute of limitations is still

---

[10] For purposes of Warta's Motion, "[t]he court must 'view the facts and draw reasonable inferences in the light most favorable to [PMK as] the [non-moving] party.'"  See Weil v. Citizens Telecom Servs. Co., 922 F.3d 993, 1002 (9th Cir. 2019) (some alterations in Weil) (quoting Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

tolled even if the servicemember had actual notice of the claim during his military service.

"The SCRA does not prevent laches from barring a servicemember's claims, as laches is a limitation on stale claims entirely independent of any applicable statutes of limitations."  Id. at 674-75 (citing Crews v. Prudential Ins. Co. of Am., Civ. No. 14-00009 ACK-RLP, 2015 WL 1646935, at *4 n.4 (D. Haw. Apr. 13, 2015) (Kay, J.)).  PMK pled laches, but it has not moved for summary judgment based on laches, nor has it opposed Warta's Motion based on laches.  See Defendant Porter McGuire Kiakona, LLP's Answer to Amended Complaint for Damages Declaratory and Injunctive Relief, filed 2/7/22 (dkt. no. 51), at 26, ¶ 10.

Even viewing the evidence in the light most favorable to PMK, there are no genuine issues of material fact, and this Court concludes that, as a matter of law, SCRA tolling applies to Warta's FDCPA claim.  This Court now turns to the elements of Warta's FDCPA claim.

B.  **Elements of an FDCPA Claim**

This district court has stated:

There are four elements of a FDCPA cause of action: (1) the plaintiff is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C.

19

> §§ 1692a-1692o.  See Minichino v. Piilani
> Homeowners Ass'n, Civ. No. 16-00461 DKW-RLP, 2016
> WL 5796799, at *4 (D. Haw. Sept. 30, 2016).

Chung, 250 F. Supp. 3d at 680.  There is no genuine issue of

material fact as to the first two elements.  Warta is a

"consumer" because he is a "natural person obligated or

allegedly obligated to pay [a] debt" to the AOAO.  See 15 U.S.C.

§ 1692a(3).  Further, the debt arose out of his ownership of the

Unit and his residence there with his assistance dog, and thus

the property that was the subject of the transaction was

primarily for personal purposes.  See 15 U.S.C. § 1692a(5);

Warta Decl. at ¶¶ 6-7.

PMK argues it is entitled to summary judgment as to

Count I because it is not a debt collector for purposes of

Warta's FDCPA claim.  Under the FDCPA,

> [t]he term "debt collector" means any person who
> uses any instrumentality of interstate commerce
> or the mails in any business the principal
> purpose of which is the collection of any debts,
> or who regularly collects or attempts to collect,
> directly or indirectly, debts owed or due or
> asserted to be owed or due another. . . .  The
> term does not include--
>
> > . . . .
>
> > (F)  any person collecting or attempting to
> > collect any debt owed or due or asserted to
> > be owed or due another to the extent such
> > activity (i) is incidental to a bona fide
> > fiduciary obligation or a bona fide escrow
> > arrangement; (ii) concerns a debt which was
> > originated by such person; (iii) concerns a
> > debt which was not in default at the time it

was obtained by such person; or
(iv) concerns a debt obtained by such person
as a secured party in a commercial credit
transaction involving the creditor.

15 U.S.C. § 1692a(6).

PMK states debt collection is not its primary purpose,
but PMK acknowledges that it performs debt collection in the
course of the legal services it offers to its clients, such as
in commercial litigation, enforcement of association rules and
covenants, addressing delinquencies in association assessments,
and litigation related to the foregoing.  [Kiakona Decl. at
¶¶ 5-6.]  PMK has been providing legal services to clients for
over thirty years, and the areas of law in which PMK performs
debt collection are among PMK's five main practice areas.  See
id. at ¶ 5 ("PMK has five main practice areas: community
association law, real estate litigation, commercial litigation,
construction litigation, and family law.").  Thus, although the
primary purpose of PMK's business is not debt collection,
Kiakona's statements establish that PMK regularly collects or
attempts to collect debts owed to or asserted to be owed to its
clients.

Specifically as to this case, PMK argues it is not a
debt collector for purposes of the FDCPA because it was pursuing
covenant enforcement against Warta, not attempting to collect
any delinquencies from him.  Warta's dispute with the AOAO,

PMK's client, began with the 5/18/16 Notice that Hawaiian Properties sent on behalf of the AOAO.  The 5/18/16 Notice assessed a $150.00 fine against Warta because he or other persons associated with the Unit violated the Plumeria Hale House Rules, as well as the terms that Warta agreed to when he was allowed to keep Oliver at the Unit.  See Mem. in Supp. of Warta's Motion, Exh. 1.  Hawaiian Properties stated: "If this continues we will need to go back to the Board [of Directors of the AOAO] to ask to have the dog removed."  [Id.]  Hawaiian Properties also stated: "To avoid additional fees make payment by June 15, 2016."  [Id.]  Thus, the 5/18/16 Notice was attempt to both obtain Warta's compliance with the House Rules and with other relevant conditions and to collect the fine assessed against him.

In November 2016, Warta "paid $6,176.85 [in an attempt] to resolve the $150.00 assessment and all of the fees associated with it[.]"  See Warta Decl. at ¶ 18.  PMK does not dispute that Warta made the payment, but it argues the payment was insufficient to resolve the amounts due to the AOAO.  See PMK's Opp. at 5-6.  Further, because Warta failed to pay the $150.00 fine by the due date specified in the 5/18/16 Notice, it became a debt owed to AOAO that was in default.

Thus, by the time the AOAO, through its counsel, PMK, initiated the State Court Case on September 20, 2016, Warta owed

22

a debt to the AOAO, and the debt was in default.  PMK argues the State Court Case was a covenant enforcement action, not an action to collect a debt.  However, although Count I of the State Court Complaint sought declaratory and injunctive relief, [Amended Complaint, Exh. A at pgs. 6-7,] Count II asserted a breach of contract claim and asserted that the AOAO has suffered damages as a result of Warta's breach of the Plumeria Hale's Governing Documents, [id. at pgs. 7-8].  The then-unpaid $150.00 fine assessed for the covenant violation is among the damages the AOAO allegedly suffered, and PMK's attempt to recover it in the State Court Case constituted an attempt to collect a debt.

Further, on October 28, 2016, PMK sent a letter to Warta ("10/28/16 Letter") stating:

> **This office represents the Association of Apartment Owners of Plumeria Hale (the "Association") to collect the debt owed to the Association.**  Assessments and other charges for Unit No. 604 are due and owing.
>
> Please be advised that:
>
>     1.   The total amounts owed to the Association as of October 28, 2016, are as follows:
>
>             Maintenance Fees          $1,228.94
>             Late Fees                    $30.00
>             Electricity Charges         $247.55
>             Attorneys' Fees           $4,103.53
>                                       ---------
>             Total due as of           $5,610.02
>             October 28, 2016

> **\*\*PLEASE NOTE THAT ATTORNEYS' FEES AND COSTS WILL
> CONTINUE TO ACCRUE UNTIL ALL COVENANT
> VIOLATION(S) HAVE BEEN CURED.**

[Mem. in Supp. of Warta's Motion, Exh. 3 at 1 (second emphasis in original).]  The 10/28/16 Letter also advised: "**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.   THIS IS AN ATTEMPT TO COLLECT A DEBT.**"  [Id. at 2 (emphasis in original).]  Warta was directed to submit payment to the AOAO through PMK.  [Id.]

PMK sent other letters to Warta informing him of the amounts due to the AOAO, directing him to pay the AOAO through PMK, and stating the communication was from a debt collector attempting to collect a debt.  See Mem. in Supp. of Warta's Motion, Exh. 9 (letter dated 10/3/17 to Warta from Kiakona), Exh. 16 (letter dated 2/20/20 to Warta, care of his counsel, from Kiakona).  Even a January 29, 2019 letter marked as a "Rule 408 H.R.E. Communication"[11] contained the statement that

---

[11] Rule 408 of the Hawai`i Rules of Evidence states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, or (3) mediation or attempts to mediate a claim which was disputed, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations or mediation proceedings is likewise not admissible.  This rule does not require the exclusion of any evidence otherwise discoverable
>          (. . . continued)

the communication was from a debt collector attempting to collect a debt.  See id., Exh. 12 (letter dated 1/29/19 to Warta, care of his counsel, from Kiakona).  Other letters marked as a Rule 408 communication did not contain the statement that the communication was from a debt collector attempting to collect a debt.  See Mem. in Supp. of Warta's Motion, Exh. 10 (letter dated 5/3/18 to Warta's counsel from PMK), Exh. 14 (letter dated 8/15/19 to Warta's counsel from PMK).  However, even to the extent that some of PMK's communications to Warta were through his counsel in connection with the State Court Case, they can still support his FDCPA claim because one of the purposes of the State Court Case was a to collect a debt. Further,

    the Ninth Circuit has stated:

> [T]he FDCPA "applies to the litigating activities of lawyers."  Heintz [v. Jenkins], 514 U.S. [291,] 294, 115 S. Ct. 1489 [(1995)].  The Supreme Court's reasoning in Heintz was twofold.  First, the Court reasoned that lawyers who collect debts through litigation plainly fall within the statutory language defining "'debt collector[s]'" to include those who

---

merely because it is presented in the course of compromise negotiations or mediation proceedings. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

"'regularly collec[t] or attemp[t] to
collect, directly or indirectly, [consumer]
debts owed or due or asserted to be owed or
due another.'"  Id. (quoting 15 U.S.C.
§ 1692a(6) (alterations in original)).
Second, the Court observed that an earlier
version of the FDCPA provided an exemption
for lawyers, but that Congress had since
repealed that exemption.  See id. at 294-95,
115 S. Ct. 1489; Pub. L. No. 95-109,
§ 803(6)(F), 91 Stat. 874, 875 (1977)
(exempting from the definition of the term
"debt collector" "any attorney-at-law
collecting a debt as an attorney on behalf
of and in the name of a client"); Pub. L.
No. 99-361, 100 Stat. 768 (1986) (repealing
the exemption); see also 15 U.S.C.
§ 1692a(6)(A)-(F) (listing current
exceptions to the definition of "debt
collector," none of which cover attorneys).

McCollough v. Johnson, Rodenburg & Lauinger, LLC,
637 F.3d 939, 951 (9th Cir. 2011) (some
alterations in McCollough).

     . . . .

     . . . . [A]n attorney representing a
condominium association in a nonjudicial
foreclosure proceeding is attempting to collect a
debt "owed or due another."  See 15 U.S.C.
§ 1692a(6).  Further, while a condominium
association's lien is treated like a mortgage
under [Haw. Rev. Stat.] § 514B-146(a) (2010), the
treatment of the lien like a mortgage does not
extend to enforcement of the lien for purposes of
a FDCPA claim.  As previously noted, the aim of a
foreclosure of a mortgage is to transfer interest
in the property securing the defaulted mortgage,
but the situation in the foreclosure of an
association's lien is not necessarily the
same. . . .

Galima v. Ass'n of Apartment Owners of Palm Ct. ex rel. Bd. of

Dirs., CIVIL 16-00023 LEK-KSC, 2017 WL 1240181, at *11-12 (D.

Hawai`i Mar. 30, 2017) (some alterations in Galima).  This Court concludes that PMK's representation of the AOAO in the State Court Case is analogous to an attorney's representation of a condominium association in a nonjudicial foreclosure proceeding. The purpose of the proceeding is, at least in part, to collect a debt owed to the AOAO, and the transfer of interest in Warta's Unit was not one of the purposes of the proceeding.

Viewing the record as a whole, in the light most favorable to PMK, this Court finds that there is no genuine issue of material fact, and this Court concludes that, as a matter of law, PMK was a debt collector under the FDCPA.

As to the fourth element of Warta's FDCPA claim, whether PMK violated one or more provisions of the FDCPA, this Court finds that there are genuine issues of material fact as to the issues of whether PMK:

-made "false, or misleading or misleading representations or means in connection with the collection of [Warta's] debt" to the AOAO, including, but not limited to, false representations regarding "the character, amount, or legal status of [his] debt;" see § 1692e(2);

-"use[d] unfair or unconscionable means to collect or attempt to collect [Warta's] debt" to the AOAO, including, but not limited to, collecting amounts that were incidental to the original $150.00 fine and were not "expressly authorized by the agreement creating the debt or permitted by law"; see § 1692f(1); and/or

-"engage[d] in any conduct the natural consequence of which [wa]s to harass, oppress, or abuse [Warta] in connection with the collection of his debt" to the AOAO, see § 1692d.

27

These genuine issues of material fact preclude the entry of summary judgment in favor of either party as to Count I.

    **C.**   <u>**Ruling**</u>

       Warta's Motion is granted in part as to Count I, insofar as this Court rules: that the FDCPA statute of limitations was tolled under the SCRA; that Warta is a consumer for purposes of the FDCPA; that Warta's debt to the AOAO arose out of a transaction that he entered into for personal purposes; and that PMK is a debt collector for purposes of the FDCPA. Warta's Motion is denied in part, insofar as this Court finds that there are genuine issues of material fact as to the issue of whether PMK committed one or more violations of the FDCPA. Because there are genuine issues of fact for trial as to the alleged FDCPA violations, Warta's Motion is denied as to his request for summary judgment as to the issue of liability for Count I. In light of this ruling, Warta's request for summary judgment as to the issue of damages for Count I is also denied.

       PMK's FDCPA Motion is denied in its entirety.

**III. <u>Count II - UDAP Claim</u>**

    **A.**   <u>**Statute of Limitations**</u>

       PMK argues "the statute of limitations bars many of the facts raised in support of Warta's Motion," and PMK notes that Warta's UDAP claims are subject to a four-year statute of limitations. <u>See</u> PMK Opp. at 4; <u>see also</u> Haw. Rev. Stat. § 480-

24 ("Any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues . . . ."). To the extent that portions of Warta's UDAP claim accrued more than four years before he filed this action, the SCRA's tolling provision applies, for the same reasons set forth as to Warta's FDCPA claim. See Chung, 250 F. Supp. 3d at 675 (ruling that the SCRA tolling provision applied, and the plaintiff's UDAP claims were not time-barred).

**B.   Elements of a UDAP Claim**

Haw. Rev. Stat. § 480-2(a) states, in pertinent part, "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 480-2(d) states: "No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." For purposes of Chapter 480: "'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Haw. Rev. Stat. § 480-1.

Warta owns the Unit, and he resided there from November 2014 to March 2017. [Warta Decl. at ¶¶ 6-7.] Thus, he

29

committed money in a personal investment.  See Cieri v. Leticia
Query Realty, Inc., 80 Hawai`i 54, 67, 905 P.2d 29, 42 (1995)
(holding that "by purchasing the home at issue in the present
case, the Cieris committed money in a personal investment, and
accordingly have standing as 'consumers'").  It is not necessary
that Warta be a consumer by virtue of a contractual relationship
with PMK.  See Hungate v. Law Off. of David B. Rosen, 139
Hawai`i 394, 412, 391 P.3d 1, 19 (2017).  Even viewing the
record in the light most favorable to PMK, there are no genuine
issues of material fact, and this Court concludes that, as a
matter of law, Warta is a consumer for purposes of § 480-1.

     However, in addition to establishing standing as a
consumer, Warta must establish that PMK's actions and omissions
that form the basis of his UDAP claim occurred in the course of
"trade or commerce."  In Hungate, the Hawai`i Supreme Court
rejected the plaintiff's argument, based in Cieri, 80 Hawai`i,
54, 905 P.2d 29, that the attorney representing the foreclosing
mortgagee was the mortgagee's agent in the foreclosure and
therefore could be held liable under § 480-2.  Hungate, 139
Hawai`i at 413, 391 P.3d at 20.  In Cieri, the Hawai`i Supreme
Court held that, because of the nature of the expertise and
resources that residential real estate brokers provide to their
clients, "a broker or salesperson actively involved in a real
estate transaction invariably engages in 'conduct in any trade

or commerce[,]" and thus "are generally subject to liability
under HRS chapter 480." 80 Hawai`i at 65, 905 P.2d at 40
(emphasis omitted).  In Hungate, the Hawai`i Supreme Court noted
that the relationship between a real estate broker and his
client is distinguishable from the attorney-client relationship
because "the role of an attorney involves representing a
client's interests against those of an opposing party within an
adversary system."  139 Hawai`i at 412-13, 391 P.3d at 19-20.
The Hawai`i Supreme Court noted that:

> Attorneys bear a duty to zealously represent
> clients "within the bounds of the law."  Giuliani
> v. Chuck, 1 Haw. App. 379, 384, 620 P.2d 733, 737
> (1980); see also Hawai`i Rules of Professional
> Conduct, "Preamble," ¶ 2; ¶ 8; ¶ 9.  In other
> settings, we have declined to recognize a duty in
> favor of a plaintiff adversely affected by an
> attorney's performance of legal services on
> behalf of the opposing party.  In Boning, we
> noted that "creation of a duty in favor of an
> adversary of the attorney's client would create
> an unacceptable conflict of interest.  Not only
> would the adversary's interests interfere with
> the client's interests, the attorney's
> justifiable concern with being sued for
> negligence would detrimentally interfere with the
> attorney-client relationship."  [Buscher v.]
> Boning, 114 Hawai`i [202,] 220, 159 P.3d [814,]
> 832 [(2007)].
>
> Permitting a party to sue his or her
> opponent's attorney for UDAP under HRS § 480-2 in
> foreclosure actions presents a similar issue in
> that an attorney's concern with being sued by a
> party opponent could compromise his or her
> representation of the client.  In a UDAP action,
> an attorney would be especially vulnerable to
> suit because, for example, under HRS § 480-2
> "actual deception need not be shown; the **capacity**

> **to deceive** is sufficient." [Haw. Cmty. Fed.
> Credit Union v.] Keka, 94 Hawai`i [213,] 228, 11
> P.3d [1,] 16 [(2000)] (emphasis added) (citations
> omitted).  Accordingly, a plaintiff would need
> only to allege that opposing counsel has breached
> the statutory duty under HRS § 480-2 "not to
> engage in unfair or deceptive acts or practices
> in the conduct of any trade or commerce . . . in
> a way that caused private damages[] in order to
> state a claim under" HRS chapter 480.  Compton
> [v. Countrywide Fin. Corp.], 761 F.3d [1046,]
> 1056 [(9th Cir. 2014)].  Given that UDAP lacks a
> more rigorous or precise state of mind
> requirement, "even a carefully rendered opinion
> could, if incorrect, have the capacity to
> deceive." Short v. Demopolis, 103 Wash.2d 52,
> 691 P.2d 163, 172 (1984) (Pearson, J.,
> concurring).  The attorney would therefore "have
> to insure the correctness of his [or her]
> opinions and strategies," rendering it "virtually
> impossible for an attorney to effectively perform
> the traditional role of legal counselor." Id.
> Similar to the negligence issue in Boning, in
> foreclosure actions an attorney's justifiable
> concern with being sued by the opposing party for
> UDAP could compromise the attorney's ability to
> zealously represent his or her client.
> Consequently, based on the allegations against
> Rosen, we decline to recognize a UDAP claim
> against him by Hungate under HRS § 480-2 in the
> instant foreclosure action.

Id. at 413, 391 P.3d at 20 (some alterations and emphasis in

Hungate) (footnotes omitted).  Thus, Hungate does not completely

foreclose the pursuit of a UDAP claim against the attorney who

represented an adverse party in a prior proceeding, but it does

preclude similar claims against attorneys who represent adverse

parties in judicial foreclosure proceedings.  PMK's

representation of the AOAO in connection with the disputes

regarding Warta's Unit is similar to Rosen's representation of

the mortgagee in <u>Hungate</u>.  Thus, for the reasons stated by the Hawai`i Supreme Court in <u>Hungate</u>, this Court concludes that Warta cannot pursue a UDAP claim against PMK because the actions and omissions that Warta's UDAP claim is based upon did not occur in the course of "trade or commerce" between Warta and PMK.  Therefore, even viewing the record in the light most favorable to Warta, there is no genuine issue of material fact, and PMK is entitled to judgment as a matter of law as to Count II.[12]  PMK's State Law Motion is granted and Warta's Motion is denied as to Count II.

## IV.  Count III - Invasion of Privacy Claim

### A.  Statute of Limitations

This Court has applied the two-year statute of limitations in Haw. Rev. Stat. § 657-4 for libel and slander claims to invasion of privacy claims.  <u>See</u> <u>Hillhouse v. Haw. Behavioral Health, LLC</u>, Civil No. 14-00155 LEK-BMK, 2014 WL 5528239, at *8 (D. Hawai`i Oct. 31, 2014) (citing <u>Shipley v. Hawaii</u>, Civil No. 05-00145 JMS/BMK, 2006 WL 2474059, at *3 (D. Hawai`i Aug. 24, 2006) ("Though there is no case law discussing what statute of limitations applies to a false light invasion of privacy claim, the court concludes that a Hawaii court would apply HRS § 657-4 to false light claims given their similarity

_____

[12] In light of this ruling, it is not necessary to address PMK's arguments regarding Haw. Rev. Stat. Chapter 443B.

to defamation claims."). However, as to the portions of Warta's claims based on actions and omissions that occurred more than two years prior to the filing of this case, SCRA tolling applies. To the extent that PMK's State Law Motion seeks summary judgment as to Count III on the ground that Warta's invasion of privacy claim is time-barred, the motion is denied.

> ### B.   __Elements of the Invasion of Privacy Claim__

This district court has stated:

> The Restatement (Second) of Torts §§ 652A–E (1977), recognizes a tort of invasion of privacy, and categorizes the tort into four types: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) false light. __Mehau v. Reed__, 76 Hawai`i 101, 111, 869 P.2d 1320, 1330 (1994); __Chapman v. Journal Concepts, Inc.__, 528 F. Supp. 2d 1081, 1099 (D. Haw. 2007).

__Singleton v. Bank of Am., N.A.__, Civil No. 14-00447 DKW-BMK, 2014 WL 6674569, at *4 (D. Hawai`i Nov. 25, 2014).

> The Restatement (Second) of Torts defines the unreasonable-publicity tort as follows:

>> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

>>> (a)  would be regarded as highly offensive to a reasonable person, and

>>> (b)  is not of legitimate concern to the public.

> Restatement (Second) of Torts § 652D (1977)
> (cited in <u>State of Hawai`i Org. of Police
> Officers (SHOPO) v. Soc'y of Prof'l Journalists–
> Univ. of Hawai`i Chapter [(SPJ)]</u>, 83 Hawai`i 378,
> 398, 927 P.2d 386, 406 (1996)).[13]

<u>Wilson v. Freitas</u>, 121 Hawai`i 120, 130, 214 P.3d 1110, 1120

(Ct. App. 2009), *as amended* (Aug. 4, 2009).

### 1.   Whether HCRR Violations Can Support an Invasion of Privacy Claim

The state court addressed the sealing of Warta's

medical records under the Hawai`i Court Records Rules ("HCRR").

This district court has stated:

> HCRR Rule 2.19 (2012) defines Personal
> Information:
>
> > 2.19. Personal information means social
> > security numbers, dates of birth (except for
> > traffic citations), names of minor children,
> > bank or investment account numbers, medical
> > and health records, and social service
> > reports.  To the extent a social security or
> > account number is required in an accessible
> > document, the last 4 digits may be
> > displayed, provided that no more than half
> > of the social security or account digits are
> > disclosed.  To the extent a birthdate is
> > required in an accessible document, the
> > birth year may be displayed.  Except as
> > provided in Rule 9.1, to the extent the name
> > of a minor is required in an accessible
> > document, the initials of the minor may be
> > displayed.  To the extent a complete social
> > security number, account number, birthdate,
> > or name of a minor child is required for
> > adjudication of a case, the complete number

---

[13] <u>SHOPO v. SPJ</u> has been overruled in part on other grounds. See <u>State of Hawai`i Org. of Police Officers v. City & Cnty. of Honolulu</u> ("<u>SHOPO v. City</u>"), 149 Hawai`i 492, 511, 494 P.3d 1225, 1244 (2021).

or birthdate shall be submitted in
accordance with Rule 9.1 of these rules.

HCRR Rule 9 requires that parties submit
documents that contain Personal Information
separately, using a sealed Confidential
Information Form.  See HCRR Rule 9; see also Oahu
Publ'ns Inc. v. Takase, 139 Hawai`i 236, 242-43,
386 P.3d 873, 879-80 (2016).

HCRR Rule 9.1 (2012) provides, in relevant
part:

(a)  Except as provided in this Rule 9 and
notwithstanding any other rule to the
contrary, a party shall not include personal
information in any accessible document filed
in any state court or with ADLRO.  Required
personal information shall be submitted by
means of a Confidential Information Form
that substantially conforms to HCRR Form 2
of these rules. . . .  The Confidential
Information Form shall be designated
confidential, protected, restricted, sealed,
or not accessible.

HCRR Rule 9.1(a).

MR v. TR, NO. CAAP-17-0000230, 2019 WL 351209, at *1-2 (Hawai`i

Ct. App. Jan. 29, 2019) (alternation in MR).

Rule 9.5 states: "The court or hearing officer may

impose appropriate monetary or other sanctions upon parties or

attorneys who do not comply with this Rule 9, where the parties

or attorneys have not shown good cause for failure to comply, or

a good faith attempt to comply with this rule."  Hawai`i Court

Records Rules (HCRR) (SCRU-10-0000086), Adopted and Promulgated

by the Supreme Court of the State of Hawai`i, Effective

September 27, 2010 With Further Amendments as Noted, *available*

*at*

https://www.courts.state.hi.us/docs/court_rules/rules/hcrr.pdf.

    The Hawai`i Supreme Court has stated:

> In recognition of the importance of protecting against such disclosures, HCRR Rule 9 explicitly permits courts to issue monetary and other sanctions for its violation. See HCRR Rule 9.5 (2012). Rule 9 does not, however, set forth the procedures to undertake when personal information has been impermissibly included in a publicly filed document.
>
> Other provisions of the Hawai`i Court Records Rules provide guidance as to the drafters' intent respecting the inadvertent filing of incorrect documents. HCRR Rule 3, titled "Duty to Maintain Record; Corrections," grants the clerk of the court the authority to replace incorrect documents without first requesting an order of the court:
>
> > Where documents are maintained in an electronic document management system, the Clerk may, with such technical assistance as required **and without order of a court replace incorrect documents that were inadvertently uploaded** by parties or that have been corrupted, with the documents that should have been uploaded . . . **provided such replacements . . . are completed within 10 business days following the initial filing and all parties are notified of the replacement.** . . .
>
> HCRR Rule 3.3 (2012) (emphases added). Therefore, when a party has "inadvertently" filed an "incorrect" document, the court clerk may replace it with a corrected version provided that such replacement occurs within ten business days of the filing and notice is given to all parties of the replacement. HCRR Rule 3.3.

HCRR Rule 3.3 also gives the clerk authority to temporarily seal documents and provides in relevant part:

> The Clerk may temporarily seal any document or record or mark any document for in-camera review pending review and a determination of accessability [sic] by the court for which the record is maintained or by the Hawai'i Supreme Court.

> HCRR Rule 3.3.  Thus, the Hawai`i Court Records Rules allow for both (1) the replacement of incorrect documents inadvertently filed and (2) the sealing of documents or records pending determinations of future accessibility by the court.  HCRR Rule 3.3.

Oahu Publ'ns, 139 Hawai`i at 245, 386 P.3d at 882 (alterations and emphases in Oahu Publ'ns) (footnote omitted).  However, the supreme court noted these rules do not address what must be done when personal information has been improperly included in a public filing, and the supreme court set forth procedures that should be followed when a party or non-party discovers the improper filing.  Id. at 246-47, 386 P.3d at 883-84.  The supreme court did not address whether the improper filing can be the basis of a tort claim against the filing party, nor does there appear to be other cases addressing that issue.

> When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.

Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011) (citations and internal quotation marks omitted).  Because nothing in the HCRR precludes the pursuit of civil remedies for violations of the rules, and because the right to privacy is highly valued under Hawai`i state law,[14] this Court predicts that the Hawai`i Supreme Court would hold that violations of the HCRR can be the basis of an invasion of privacy claim.

This Court now turns to the issue of whether either Warta or PMK is entitled to summary judgment as to any portion Warta's invasion of privacy claim.

### 2.   **Warta's Claim**

On January 16, 2018, the state court issued an order sealing the following pages of documents that had been publicly filed by the AOAO in the State Court Case:

    a.   Pages 78-82 of the Complaint for Declaratory and Injunctive Relief, filed herein on September 20, 2016;

    b.   Pages 55-59, 77-81, and 87-105 of Plaintiff's Motion for Default Judgment and/or Summary Judgment Seeking Declaratory and Injunctive Relief, filed herein on July 7, 2017;

    c.   Pages 54-58, 76-80, and 86-89 of Plaintiff's Motion for Default Judgment and/or Summary Judgment Seeking Declaratory and Injunctive

---

[14] Article I, section 6 of the Hawai`i Constitution states, in pertinent part, "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest."

Relief, filed herein on October 24, 2017;
and

d.    Pages 23-27, 45-49, 55-58, 82-86, and 93-96
of Plaintiff's Memorandum in Opposition to
Motion to Stay Proceedings Pursuant to 50
U.S.C. § 3932, filed herein on November 22,
2017.

[Kiakona Decl., Exh. 3 (AOAO's Ex Parte Motion to Seal Pages in

Record Pursuant to HCRR Rule 9, filed 1/17/18) at PageID

#: 1036-37 (order granting motion).]

As previously noted, Warta represented himself pro se,

until special counsel was appointed on October 24, 2017, and

Sherman was substituted as counsel on November 7, 2017.  See id.

at ¶¶ 14-15.  It is undisputed that PMK included Warta's

medical/health records within publicly filed documents.  PMK did

not move to seal the records until Warta's counsel requested

that they be sealed.  See PMK's CSOF at ¶ 11 ("By request of

Warta's counsel in the [State] Court Action, PMK filed the

appropriate motion to seal the records containing personal

information." (citing Kiakona Decl., Exh. 8 (AOAO's Memorandum

in Opposition to Defendant's Motion to Set Aside Default Entered

April 21, 2017, filed 10/21/20) at PageID #: 1195 (Busekrus

Decl. at ¶ 11))).[15]

_____

[15] PageID numbers 1193 to 1197 is the Declaration of
Counsel, signed by Marcus A. Busekrus on October 21, 2020
("Busekrus Declaration").  Mr. Busekrus was one of the attorneys
of record for the AOAO in the State Court Case.  [Kiakona Decl.,
Exh. 8 at PageID #: 1193 (Busekrus Decl. at ¶ 1).]

Warta has not presented the documents that are the subject of his invasion of privacy claim.  Warta states:

> 12.  My medical records in the military are confidential and are not available to my commanding office absent exigent circumstances.
>
> . . . .
>
> 15.  Publishing my medical records in the court documents in the state lawsuit potentially exposed my medical records to my command at a critical time when I was about to be deployed overseas and jeopardized my career in the military.
>
> 16.  It is common knowledge in the military that a servicemember does not want his command to be concerned with the issues that PMK published regarding my medical history . . . .

[Warta Opp. Decl. at PageID #: 1326-27.]  While these statements are relevant to the question of whether a reasonable person would regard the type of disclosure that PMK made to be highly offensive, these statements are an insufficient description of PMK's disclosure for this Court to consider Warta's request for summary judgment.

In support of its position as to Count III, PMK presents the AOAO's filings from the State Court Case.  These filings suggest that there was only one document at issue, but that the document was attached to multiple exhibits that PMK filed on the AOAO's behalf.  See Kiakona Decl., Exh. 8 at PageID #: 1195 (Busekrus Decl. at ¶ 13 ("After the medical record issue was raised, Plaintiff promptly moved to seal **the document in**

41

**question.**" (emphasis added))).  According to Mr. Busekrus, the document was

> [a] doctor's note prepared by [Warta]'s doctor
> [that] had been previously provided by [Warta] to
> the Association to verify [Warta]'s request to
> keep an assistance animal at [Plumeria Hale].
> The only reason the doctor's note became part of
> the record is because it was part of the written
> correspondence between Plaintiff's counsel and
> Defendant regarding his request to keep the dog
> at [Plumeria Hale] - which is clearly of critical
> importance to the merits of this action.

[Id. (Busekrus Decl. at ¶ 12).]  Although Warta ultimately bears the burden of production and the burden of persuasion as to Count III, to the extent that PMK's State Law Motion seeks summary judgment in favor of PMK as to Count III, PMK also had an obligation to ensure that the record was sufficiently developed for this Court to evaluate its request.

       This Court finds that there is insufficient evidence in the current record for it to rule upon either Warta's or PMK's request for summary judgment as to Count III.  As previously stated, the invasion of privacy claim under Hawai`i law is based on the Restatement (Second) of Torts § 652D.  See Wilson, 121 Hawai`i at 130, 214 P.3d at 1120.  The comments to § 652D indicate that the requirement that the defendant's publication of the plaintiff's private matter "is of a kind that . . . would be regarded as highly offensive to a reasonable person," is a high standard.

42

Every individual has some phases of his life and his activities and **some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close friends**. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

Restatement (Second) of Torts § 652D cmt. b. (emphasis added).

The rule stated in this Section gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable man. **The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens.** Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part. Thus **he must expect the more or less casual observation of his neighbors as to what he does, and that his comings and goings and his ordinary daily activities,** will be described in the press as a matter of casual interest to others. The ordinary reasonable man does not take offense at a report in a newspaper that he has returned from a visit, gone camping in the woods or given a party at his house for his friends. Even minor and moderate annoyance, as for example through public disclosure of the fact that the plaintiff has clumsily fallen downstairs and broken his ankle, is not sufficient to give him a cause of action under the rule stated in this Section. **It is only when the publicity given to him is such that a reasonable person would feel justified in**

43

> **feeling seriously aggrieved by it, that the cause of action arises.**

Id., cmt. c. (emphases added).  Examples of the type of "'highly personal and intimate information'" the public disclosure of which can support the tort of invasion of privacy include: "'[s]exual relations, . . . family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most **details of a man's life in his home,** and some of his past history that he would rather forget.'"  SHOPO v. City, 149 Hawai`i at 511-12, 494 P.3d at 1244-45 (quoting SHOPO v. SPJ, 83 Hawai`i at 398, 927 P.2d at 406 (1996) (alterations omitted) (citing Restatement (Second) of Torts § 652D cmt. B (Am. Law Inst. 1977))).

Warta admits that Oliver lived with him at his Plumeria Hale Unit for over two years.  See Warta Decl. at ¶ 7. Others associated with the Plumeria Hale complex were aware that Warta had a dog at his Unit.  See, e.g., Mem. in Supp. of Warta's Motion, Exh. 1 (5/18/16 Notice) ("On several occasions you or other people associated with your unit (or their friends) have been allowing your pet loose in the common area(s) and are not picking up after the dog.").  Thus, the fact that Warta had a dog was not information that Warta either kept to himself or revealed only to his family and close friends.  Warta's comings and goings with Oliver could be casually observed by his

44

Plumeria Hale neighbors.  See Restatement (Second) of Torts
§ 652D cmt. b, cmt. c.  If, as PMK has suggested, the medical
records that were (temporarily) publicly available in the State
Court Case merely reflected the fact that Warta had an
assistance animal, that may not be the type of highly personal
and intimate information that can support an invasion of privacy
claim.  However, if the medical records that were (temporarily)
publicly available in the State Court Case included information
about the medical condition(s) that made it necessary for Warta
to have an assistance animal, that may constitute information
about an "unpleasant or disgraceful or humiliating illness[],"
the disclosure of which may support an invasion of privacy
claim.  See SHOPO v. SPJ, 83 Hawai`i at 398, 927 P.2d at 406
(quoting Restatement (Second) of Torts § 652D at 386,
comment b).

     Viewing the record as a whole, this Court finds that
there is insufficient information to properly evaluate either
Warta's or PMK's request for summary judgment as to Count III.
Warta is therefore ORDERED to file the medical records that PMK
publicly filed in the State Court Case and that are the basis of
his invasion of privacy claim.  Because Warta has asserted that
the documents contain confidential medical information, this
Court finds that there are compelling reasons for the filing to
be sealed.  See Kamakana v. City & Cnty. of Honolulu, 447 F.3d

1172, 1179 (9th Cir. 2006) ("'compelling reasons' must be shown to seal judicial records attached to a dispositive motion" (citation omitted)).  The records shall be accompanied by an authenticating declaration, which shall be a publicly available filing.

If PMK contests the accuracy or completeness of Warta's submission, PMK may file, under seal, its own set of the medical records that were publicly filed in the State court Case.  PMK's records shall be accompanied by an authenticating declaration, which shall be a publicly available filing.

No additional argument may be submitted with either filing.  Warta's filing is due by **August 30, 2022,** and PMK's optional filing is due by **September 2, 2022**.  This Court will reserve ruling on the portions of Warta's Motion and PMK's State Law Motion addressing Count III until it has reviewed the submissions.

## V.   Count IV - Intentional and Negligent Misrepresentation

### A.   Statute of Limitations

"Fraudulent misrepresentation and other claims sounding in fraud are subject to the six-year statute of limitations period in Haw. Rev. Stat. § 657-1(4)."  Chavez v. Deutsche Bank Nat'l Tr. Co., CIV. NO. 17-00446 LEK-RT, 2020 WL 7038589, at *20 (D. Hawai`i Nov. 30, 2020) (citing McLauchlan v. Boyd, Civil No. 10-00671 LEK-RLP, 2012 WL 13018730, at *6 (D.

46

Hawai`i Apr. 26, 2012) (citing cases)), *reconsideration denied*, 2021 WL 1256897 (Mar. 24, 2021), *aff'd*, No. 21-15599, 2022 WL 542558 (9th Cir. Feb. 23, 2022).  The six-year statute of limitations also applies to negligent misrepresentation claims. Ohana Control Sys., Inc. v. City & Cnty. of Honolulu, CIVIL NO. 21-00345 JAO-KJM, 2021 WL 5890659, at *15 (D. Hawai`i Dec. 13, 2021) (citing HRS § 657-1(4); Aana v. Pioneer Hi-Bred Int'l, Inc., 965 F. Supp. 2d 1157, 1182 (D. Haw. 2013); Eastman v. McGowan, 86 Hawai`i 21, 27, 946 P.2d 1317, 1323 (1997)).  All of the actions and omissions at issue in this case occurred within six years prior to the filing of this action.

> ### B.     **Negligent Misrepresentation**

"Negligent misrepresentation has the following elements: (1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." Santiago v. Tanaka, 137 Hawai`i 137, 153-54, 366 P.3d 612, 628-29 (2016) (citations and internal quotation marks omitted).  PMK argues it is entitled to summary judgment as to Warta's negligent misrepresentation claim because it owed no duty to Warta, who was an adverse party to PMK's client, the AOAO.  [Mem. in Supp.

of State Law Motion at 6 (citing Buscher v. Boning, 114 Hawai`i 202, 220, 159 P.3d 814, 832 (2007)).]

Warta did not address his negligent misrepresentation claim in the State Law Opposition.  Thus, PMK's request for summary judgment as to that claim is unopposed.  Moreover, PMK is correct that, under Hawai`i law, an attorney does not owe a duty to his client's adversary, and therefore the adversary cannot bring a negligence claim against the attorney.  See Buscher, 114 Hawai`i at 220, 159 P.3d at 832.  This Court finds that there are no genuine issues of material fact and PMK is entitled to judgment as a matter of law as to Warta's negligent misrepresentation claim.

C.   **Intentional Misrepresentation**

> The elements of an intentional misrepresentation claim are: "(1) false representations were made by defendants; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon these false representations; and (4) plaintiff did rely upon them."  Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Hawai`i 232, 263, 167 P.3d 225, 256 (2007) (brackets, emphasis, and citation omitted).

Soderholm Sales & Leasing, Inc. v. BYD Motors Inc., CIV. NO. 19-00160 LEK-KJM, 2021 WL 4313608, at *18 (D. Hawai`i Sept. 22, 2021).  Because intentional misrepresentation is a fraud claim, it must be proven by clear and convincing evidence.  Id. at *15

48

(citing <u>Fisher v. Grove Farm Co.,</u> 123 Hawai`i 82, 103, 230 P.3d 382, 403 (Ct. App. 2009)).

      Viewing the record in the light most favorable to Warta, there are genuine issues of fact as to the questions of whether PMK made false representations, whether PMK intended Warta to rely on its representations, and whether Warta did in fact rely on PMK's representations.  However, Warta has failed to identify sufficient evidence to raise a genuine issue of fact as to the questions of whether PMK knew the representations were false or whether it made the representations without knowing the representations were true or false.  PMK is therefore entitled to judgment as a matter of law as to Warta's intentional misrepresentation claim.

> ### D.   **Ruling**

      PMK's State Law Motion is granted, insofar as summary judgment is granted in favor of PMK as to Count IV.

## CONCLUSION

      For the foregoing reasons, Warta's Motion for Partial Summary Judgment, filed May 7, 2022, is GRANTED IN PART AND DENIED IN PART.  Warta's Motion is GRANTED, insofar as this Court RULES: that SCRA tolling applies to Warta's claims; that Warta is a consumer for purposes of the FDCPA; that Warta's debt to the AOAO arose out of a transaction that he entered into for personal purposes under the FDCPA; that PMK is a debt collector

for purposes of the FDCPA; and a violation of the Hawai`i Court Records Rules may support an invasion of privacy claim.  Warta's Motion is DENIED, insofar as this Court RULES: that Warta is not entitled to summary judgment as to Count I because there are genuine issues of material fact that preclude summary judgment as to the issue of whether PMK violated the FDCPA; and that Warta is not entitled to summary judgment as to Count II because summary judgment is granted in favor of PMK as to that claim. The Court RESERVES RULING on the portion of Warta's Motion seeking summary judgment as to liability for Count III, pending consideration of the submissions described in this Order.

PMK's Motion for Partial Summary Judgment on Count I, Fair Debt Collections Practices Act, filed May 7, 2022, is DENIED.

PMK's Motion for Partial Summary Judgment on Counts II, III, and IV, filed May 7, 2022, is GRANTED IN PART. PMK's State Law Motion is GRANTED, insofar as summary judgment is granted in favor of PMK as to Counts II and IV.  The Court RESERVES RULING on the portion of PMK's State Law Motion seeking summary judgment as to Count III, pending consideration of the submissions described in this Order.

Warta's submission is due by **August 30, 2022**, and PMK's optional submission is due by **September 2, 2022**.  No further briefing regarding Count III will be considered.

50

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 23, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

JEREMY WARTA VS. PORTER, MCGUIRE & KIAKONA, LLP; CV 21-00100
LEK-WRP; ORDER:  GRANTING IN PART AND DENYING IN PART THE
PARTIES' MOTIONS FOR SUMMARY JUDGMENT; AND RESERVING RULING ON
THE PORTIONS OF THE MOTIONS ADDRESSING PLAINTIFF'S INVASION OF
PRIVACY CLAIM